MISSOURI PACIFIC RAILROAD COMPANY v. MYERS.

Opinion delivered February 3, 1930.

1068

*Thos. B. Pryor, Vincent M. Miles* and *Thos. B. Pryor, Jr.,* for appellant.

*C. M. Wofford,* for appellee.

BUTLER, J. This is a suit brought by the appellee against the appellant to recover for damages to an automobile which resulted from a collision with appellant's passenger train at Alma, on the 8th of December, 1928. There was a trial in the circuit court of Crawford County, resulting in a verdict and judgment for the appellee, from which this appeal is prosecuted.

The facts may be briefly stated as follows: Lee Lollis, while in the employ of the appellee, and in the discharge of his duties, left the home of the appellee in a Chevrolet car to journey to Little Rock. His route lay through the town of Alma, where he arrived about 3:30

o'clock in the morning. Passing through the town on the main street, he reached the railway crossing, and found it blocked by a freight train. He turned and went one block east to find the crossing there blocked by a locomotive attached to the train which blocked the Main street crossing. The engineer in charge of the locomotive, in compliance with a signal given by Lollis, backed his locomotive so that about one-half of the crossing was left clear, giving sufficient room for Lollis to pass, which he did, and proceeded two blocks to the north, where he found the highway blocked at that point. He then returned to the crossing over which he had just passed, where he found the locomotive in the same position as when he crossed.

There is a dispute as to whether the headlight of the locomotive was shining, or whether it had been turned out, Lollis stating that it was lighted, and the operators of the train that it was not. Before attempting to cross the track again, Lollis stopped his car about fifteen feet from the track, putting his car in low gear, and starting over the crossing directly in front of the locomotive. Passing on from thence his car reached the main track just as a passenger train was passing, which train struck his automobile, demolishing it. As Lollis passed from in front of the locomotive and entered on the space between the side track and the main track, he discovered the approach of the passenger train, and, being unable to stop his car, he turned it so that it went at an angle on to the main track and not directly in front of the passenger locomotive. The testimony is conflicting regarding the giving of signals by the blowing of the whistle and the ringing of the bell for the crossing. Witnesses for the appellant all testified that such signals were given, and Lollis testified that he did not know the passenger train was approaching, and did not hear any whistle sounded or bell rung. The testimony to the effect that the engineer and fireman on the passenger locomotive were keeping a lookout, and that they did not see, and could not have

seen, Lollis until he had passed from in front of the freight locomotive on the side track, was uncontradicted. When Lollis stopped his car just before entering upon the crossing, he saw two or three men in the cab of the freight engine, and the headlight of the freight engine was turned on. The men he saw were the engineer and the firemen of the freight train. They were expecting the passenger train, and had entered on the side track for the purpose of clearing the main line for its passage, and, at the time Lollis entered the second time upon the crossing in front of the freight locomotive, the engineer was looking back in the direction from which the passenger train was approaching. The fireman at that time was shoveling coal into the furnace of the locomotive, one of the brakemen was on the left side, two or three cars back from the engine, looking over the train, and another was standing south of the depot, some distance away from the crossing. None of the train crew were watching the crossing in front of the locomotive, and none saw Lollis when he approached the second time, or when he went upon the crossing, passing in front of the locomotive, just before the collision. The car Lollis was driving was a closed car, and it is uncertain whether or not the windows of the car were up, the testimony on this point not being very clear. The locomotive and freight cars on the side track prevented Lollis from seeing the approaching passenger train, and prevented the engineer and fireman on that train from seeing him.

At the request of the appellee, the court gave the following instruction: "Under the laws of this State, it is the duty of all persons running trains upon any railroad in the State to keep a constant lookout for persons and property upon the tracks of such railroad. If any person or property is injured by the neglect of any employee of any railroad to keep such a lookout, the company owning or operating such railroad shall be liable and responsible to the person injured for all damages resulting from the neglect to keep such lookout, notwith-

standing any contributory negligence, if any be shown, on the part of the person injured, where, if such lookout had been kept, the employee or employees in charge of such train could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care; and the burden of proof is upon the railroad to establish the fact that this duty to keep such lookout has been performed.''

It is the contention of the appellant that this instruction should not have been given for the reason that the undisputed proof shows that, if the engineer and firemen had been keeping the lookout, they could not have discovered the approaching automobile in time to avoid striking it, and for the further reason that there was no allegation in the complaint which warranted the submission of that issue to the jury. We agree with the appellant in this contention, but are of the opinion that, in view of the other instructions given and the testimony, the attention of the court should have been called to the vice of this instruction by specific objection, and that a general objection was not sufficient.

The case of *Missouri Pac. Rd. Co.* v. *Wright,* 168 Ark. 259, 270 S. W. 601, relied on by the appellant as authority for the position taken by it, is quite similar to the instant case. In that case the court held that it was error to submit to the jury the issue of failure to keep a lookout, both because there was no allegation of negligence in this regard, and because it was undisputed that the view was obstructed so that the train crew could not see any one approaching in time to avoid a collision. The appellant requested the court to give an instruction excluding that question from the consideration of the jury, which instruction the court refused. The request for the instruction was tantamount to a specific objection. In the case at bar there was only a general objection, and, since the instruction was a correct declaration of law, if the defendant conceived that it was abstract as submitting an issue not raised by the pleadings or testimony, it should have

called the attention of the court to this error by specific objection, or by asking the court, as in the Wright case, *supra,* to give the jury the instruction excluding that question. *Moline Lumber Co.* v. *Taylor,* 144 Ark. 318, 222 S. W. 371; *Cohn* v. *Chapman,* 150 Ark. 258, 234 S. W. 42; *Roach* v. *Scott,* 157 Ark. 165, 247 S. W. 1037.

By instruction No. 3, at the instance of the appellee, the court presented the issue in this case. That instruction is as follows: "You are instructed that, if you find from the evidence in this case that, at the time plaintiff's car was approaching the crossing where it is alleged the injury occurred, a freight train occupied a side track, and was partly upon said crossing, or near thereat, waiting for an east-bound passenger train to pass, it was the duty of the employees of defendant on both trains to keep a constant lookout for persons or cars upon said tracks and crossing; and if the destruction of plaintiff's car was the result of the negligence of the employees of defendant to keep such lookout, the defendant is liable to plaintiff for the injury to his car." This instruction is not complained of by the appellee in his brief, and we think the instruction, when taken together with instructions given at the request of the appellant, which submitted the question of contributory negligence, correctly stated the law in this case. It is our view that the testimony fails to disclose any negligence on the part of the operators of the passenger train, and the jury might well have been so instructed, but the negligence, if, any, consisted in the failure of the operators of the freight train, after having cleared the crossing and knowing of the imminent arrival of the passenger train, to maintain a watch on the crossing for any one who might approach, as the view of any such person would be obstructed by the freight train. Under ordinary circumstances, the exercise of ordinary care would not require a lookout to be kept by the operators of a freight train on a side track to watch for persons entering upon the crossing, but this cannot be said to be the case where a freight train clears

the crossing, and thus impliedly invites persons to enter thereon when the view is obstructed, and where the approach of another train is expected at any moment. This would be a proper question for submission to a jury.

The next proposition relied upon for reversal is that the uncontradicted evidence established the negligence of the driver of the car, and that this was the proximate cause of his injury. It is true that the evidence is undisputed, but we cannot say as a matter of law that these facts sustained the appellant in its contention. The situation was such that there might easily be a difference of opinion as to what might constitute ordinary caution under the circumstances. Viewing the facts and making the deductions therefrom in a light most favorable to the appellee, as we are bound to do, it might be said that, while as a usual thing it would have been the duty of the driver of the car to exercise extra caution in the use of the crossing where the track is obstructed so as to interfere with sight or hearing, still, where, in response to a signal given by the driver of a vehicle, the crossing is cleared for its passage, over which it passes safely, and on his return in a short time to recross the driver sees the crossing still clear and the locomotive of the freight train standing where he had last seen it, with headlight burning, it cannot be said that it was unreasonable for him to assume that there was an invitation to again cross the track with the implied assurance that the way was safe. The conduct of the train crew in charge of the freight train in the instant case was such that an ordinarily prudent person might have assumed that the crossing was clear, and have acted upon this assumption. What is ordinary care, or what is negligence, depends upon the peculiar character of the circumstances incident to each case, and we are of the opinion that the facts in this case warranted the submission to the jury of the question of the driver's negligence.

"The suggestions of ordinary caution and prudence may require the traveler, under peculiar circumstances,

to get out of his vehicle and approach the track and look up and down it in both directions before attempting to cross it, but plainly there can be no rule of law establishing such a duty for all cases; but whether the circumstances are of that peculiar character which requires the traveler so to act will be a question of fact for the jury." *Elkins* v. *Western Maryland Ry. Co.*, 76 W. Va. 733, 86 S. E. 762, 1 A. L. R. 198.

"It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury, and this whether the uncertainty arises from a conflict in the testimony, or because, the facts being disputed, fair-minded men will honestly draw different conclusions from them." *St. L. I. M. & S. R. Co.* v. *Hitt*, 76 Ark. 227, 88 S. W. 908.

The allegations in the complaint relating to negligence for failure to keep a lookout might not have been sufficient to include a charge of negligence on the part of the engineer and fireman on the passenger train to keep a constant lookout, as provided by § 8568, Crawford & Moses' Digest, but it was sufficient to allege negligence on the part of the crew of the freight train for failure to watch for and warn travelers on the highway of the approach of passenger trains, since it was through their acts that a view of the tracks and the approaching train was prevented.

The record presents no reversible error, and we think that the circumstances warranted the submission of the question of the negligence of the appellant and the contributory negligence of the appellee to the jury. The judgment is therefore affirmed.