399 S.E.2d 654

Mrs. Betty **COSTOPLOS**, Individually and as Administratrix C.T.A. for the Estate of William A. Costoplos, Deceased,

v.

**PIEDMONT AVIATION, INC.**

No. 19084.

Supreme Court of Appeals of West Virginia.

April 12, 1990.

Eugene R. Hoyer, Christopher S. Smith, Hoyer, Hoyer and Smith, Charleston, for Mrs. Betty Costoplos.

Robert Scott Long, Spilman, Thomas, Battle & Klostermeyer, Charleston, for Piedmont Aviation, Inc.

PER CURIAM:

This is an appeal by Mrs. Betty Costoplos from an order of the Circuit Court of Mercer County granting Piedmont Aviation,

Inc., the defendant below, a directed verdict in a wrongful-death action. On appeal, Mrs. Costoplos claims that the circuit court erred in directing the verdict and argues that the case should have been submitted to a jury. After reviewing the record, this Court agrees that the trial court erred in directing the verdict and reverses the decision of the circuit court on that point.

On February 9, 1984, the appellant's husband, William A. Costoplos, was killed in an airplane crash at the Mercer County Airport. The appellant sued Piedmont Aviation, Inc. for damages resulting from the death. She also sued other defendants, including Piper Aircraft Corporation. Her theory, as relevant to the present appeal, was that on the day before the crash a Piedmont employee had damaged a magneto from the plane while inspecting it, that the damaged magneto had caused the plane to lose power on take-off, and that the loss of power had caused the plane to crash.

During pretrial proceedings in the case, the appellant learned that regulations of the Federal Aviation Administration required that the manufacturer's repair manual be followed during the inspection and repair of certain airplane parts, and that the manufacturer's repair manual for a magneto on the plane that crashed cautioned that opening the points on the magneto to more than one-sixteenth of an inch would damage them. The appellant also learned, while taking the deposition of Mr. James Johnston, a Piedmont mechanic who inspected the plane on the day before the fatal crash, that he had spread the points on the plane's magneto. When asked during the deposition how far the points could be safely spread, Mr. Johnston indicated "an eighth of an inch."

The appellant also learned during the pre-trial proceedings that a report filed with the National Transportation Safety Board showed that Timothy Connelly, the pilot of the plane on the day of the fatal crash, had experienced a drop in the indicator of magneto function, while performing a pre-take-off engine check. Mr. Connelly in a subsequent deposition indicated a drop of 300–500 engine revolutions per minute.

Before the case actually went to trial, all the defendants except Piedmont Aviation, Inc., settled with the appellant. After entry of the settlement, Piedmont moved that the court reduce its liability as might be determined by the jury by the full pre-trial settlement amounts paid by the other defendants. The trial court granted that motion.

To establish her case during trial, the appellant adduced the testimony of Mr. Bernard Doyle, an expert in air-accident reconstruction. Mr. Doyle, who had examined the circumstances surrounding the February 9, 1984, crash, expressed the opinion that the immediate cause of the crash was a partial loss of engine power. He also indicated that magneto malfunction could have caused the loss of power. He later also testified that if the pilot had experienced the significant drop in magneto function suggested by Mr. Connelly's prior statements, then under Federal Aviation Regulations he had a mandatory duty to terminate the flight.

The appellant also adduced the testimony of Mr. James Johnston, the Piedmont mechanic, and Mr. Timothy Connelly, the pilot of the plane. Mr. Johnston during trial recanted his prior statement, given during his deposition, which indicated that the points on the magneto could be safely spread one-eighth of an inch apart. To impeach him, the appellant introduced the prior statement. The appellant also adduced from him testimony which indicated that it was impossible to see the points unless they were spread to more than one-sixteenth of an inch apart. Mr. Connelly, the pilot, also recanted certain of his prior testimony and indicated that his recollection was that he had never had a drop in magneto reading in excess of 175 revolutions per minute, the maximum allowable under the appropriate operating manual.

At the close of the appellant's case, Piedmont Aviation, Inc., moved for a directed verdict. Piedmont argued that the evidence showed that Pilot Connelly had experienced a magneto reading showing a loss of engine revolutions per minute and a consequent loss of power. It argued that

given the situation he was negligent in continuing the take-off and that his negligence was an intervening or superseding cause of the accident and that in view of the intervening negligence it could not be held legally liable for the consequences of the accident.

The circuit court, after hearing the arguments of the parties, granted Piedmont's motion. In a subsequent order, the court ruled that if there had been a substantial drop in engine revolutions per minute, the pilot's continuing with the flight constituted intervening or superseding negligence which relieved Piedmont of liability.

On appeal, the appellant claims that the evidence, when viewed in the light most favorable to her, was sufficient to support a jury conclusion that Piedmont's negligence proximately caused the airplane crash. She also argues that Piedmont's superseding or intervening cause argument is without legal merit.

In *Wager v. Sine,* 157 W.Va. 391, 201 S.E.2d 260 (1973), this Court discussed how a trial court should weigh the evidence in considering a motion for a directed verdict. The Court concluded in syllabus point 5 that:

> Upon a motion for a directed verdict, all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed.

*See Ashland Oil, Inc. v. Donahue,* 164 W.Va. 409, 264 S.E.2d 466 (1980).

■ In his deposition in the present case, James Johnston, the mechanic who repaired the magneto, testified that the magneto points could be spread safely apart to one-eighth of an inch. At trial, although he recanted his deposition testimony and indicated that he had never spread the points more than one-sixteenth of an inch, he indicated that it would not be possible to inspect the points by using a screwdriver unless the points were spread more than one-sixteenth of an inch. There was also evidence indicating that spreading the points more than one-sixteenth of an inch would damage the points and cause engine failure or power loss.

Tim Connelly, the pilot of the plane which crashed, in his written report to the National Transportation Safety Board, as well as in his deposition, indicated that during a magneto check prior to take-off on the morning of the crash, he experienced a drop of 300 to 500 engine revolutions per minutes. Bernard Doyle, an expert in air accident reconstruction, testified that, based upon the rpm drop, the crash of the airplane was caused by a power loss.

When viewed in the light most favorable to the appellant, as required by the authorities cited above, the evidence adduced during trial would have supported a jury conclusion that mechanic Johnston improperly spread the points on the magneto on the day before the fatal plane crash, that his action caused the plane to lose power on take-off, and that the loss of power caused the plane to crash.

■ Although it is recognized that a negligent defendant may be saved from liability by what is commonly referred to as a supervening cause or as an intervening cause, such a cause arises only when the negligence of a party other than the defendant intervenes and becomes the only proximate cause of the injury. *See McKinney v. Miller,* 138 W.Va. 324, 75 S.E.2d 854 (1953). The supervening or intervening cause must be a negligent act or omission which constitutes a new effective cause, and which operates independently of any other act, making it, and only it, the cause of the injury. *Robertson v. LeMaster,* 171 W.Va. 607, 301 S.E.2d 563 (1983); *Perry v. Melton,* 171 W.Va. 397, 299 S.E.2d 8 (1982); *Lester v. Rose,* 147 W.Va. 575, 130 S.E.2d 80 (1963).

■ In the present case, Piedmont Aviation, Inc., argues that the evidence shows that Pilot Connelley's actions in continuing the take-off after the drop in magneto performance were negligent and that that negligence was a supervening or intervening cause which relieves it of liability and that on the basis of that supervening or intervening cause the trial court properly could have directed the verdict.

As previously indicated, Pilot Connelly recanted portions of his testimony relating

to the extent of magneto drop during take-off.

When Pilot Connelly recanted his testimony, questions of credibility and fact were injected into the trial. His testimony was such that a jury might have concluded that he saw evidence of a drop in revolutions per minute, suggesting power loss, but not of such a magnitude as to require him to abort the flight. At that point, at the very least, the questions of whether Pilot Connelly's actions were negligent and whether that negligence constituted an intervening cause became questions for the jury to decide.

Overall, this Court believes that, when all reasonable doubts and inferences are resolved in favor of the appellant, as is required by *Wager v. Sine, supra,* the jury reasonably could have found in favor of the appellant under the law of this State. Under such circumstances, the granting of a directed verdict in favor of Piedmont Aviation, Inc. by the Circuit Court of Mercer County was improper.

The appellant also claims that the trial court erred in granting Piedmont Aviation, Inc., credit against any liability for the settlements made by the other defendants in the case. In arguing this point, the appellant speaks at great length about the law of contribution among joint tortfeasors in West Virginia.

After the filing of the present case, this Court, on February 22, 1990, handed down its decision in *Board of Education of McDowell County v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 390 S.E.2d 796 (1990), in which the Court discussed the doctrine of contribution and the related area of credit. In actuality, in the present case a contribution/credit question was not definitively developed since the appellant's case did not proceed to judgment. However, the basic rule relating to contribution/credit, as such a problem is suggested in the present case, is set forth in the first portion of syllabus point 7 of *Board of Education of McDowell County v. Zando, Martin & Milstead, Inc., Id.,* as follows:

> Defendants in a civil action against whom a verdict is rendered are entitled to have the verdict reduced by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties....

Since the Court has concluded that the present case must be remanded for retrial, the Court believes that it is unnecessary to discuss in length the appellant's contribution/credit issue. Instead, the Court refers the parties and the trial court to syllabus point 7 of *Board of Education of McDowell County v. Zando, Martin & Milstead, Inc., Id.,* as well as the body of that opinion, for further guidance on this issue.

For the reasons stated, the judgment of the Circuit Court of Mercer County is reversed, and this case is remanded for trial.

Reversed and remanded.